IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| **AVARY LEIGH,** *individually and on behalf of all similarly situated persons,* )<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | C.A. No. 8:10-cv-00218 (DKC) |
| **v.** )<br>) | |
| **BOTTLING GROUP, LLC ,** )<br>) | |
| **Defendant.** )<br>) | |

STIPULATION AND SETTLEMENT AGREEMENT
OF FAIR LABOR STANDARDS ACT ("FLSA")
<u>COLLECTIVE ACTION CLAIMS</u>

This Stipulation and Settlement Agreement of Fair Labor Standards Act ("FLSA")

Collective Action Claims ("Settlement," "Stipulation," or "Agreement") is made between Avary

Leigh ("Named Plaintiff") on behalf of himself and each of the other "Potential Plaintiffs" as

defined herein, on the one hand, and the defendant, Bottling Group, LLC ("BG," "Bottling

Group" or "Defendant") on the other hand, in the action pending before the Honorable Deborah

K. Chasanow of the United States District Court for the District of Maryland ("District Court"),

Case No. 8:10-cv-00218 (DKC), <u>Avary Leigh v. Bottling Group, LLC,</u> (referred to as the

"Collective Action" or the "Action") and subject to the approval of the District Court. As set

forth herein, only those Potential Plaintiffs who become Settlement Collective Members shall be

bound by the Settlement. The Named Plaintiff and BG shall hereinafter collectively be referred

to as the "Parties." This Settlement was reached pursuant to negotiations culminating in a

meeting of counsel for the Parties on May 27, 2010, and subsequent telephonic meetings of

counsel. In the event the Settlement does not become effective in accordance with the terms of this Stipulation, or the Settlement is not approved, or is terminated, canceled or fails to become effective for the reasons specified in this Stipulation, any Orders entered pursuant to this Stipulation shall be rendered null and void and shall be vacated, and the Parties and their Counsel shall revert to their respective positions existing immediately prior to the date they entered into this Stipulation.

Solely for purposes of this Settlement, the Parties stipulate and agree to define the "Potential Plaintiffs" as consisting of all persons employed by BG from January 27, 2007 through January 1, 2011 (referred to as the "Collective Action Period") in the role of Relief Pre-Sell Representative in the following six Market Units: Chesapeake, Michigan, Minnesota, New England, Upstate New York and Western Pennsylvania. These positions will collectively be referred to as "Covered Positions".

The phrase "Settlement Collective Members" refers to all Potential Plaintiffs who submit a timely and properly completed Claim Form/FLSA Consent Form ("Claim Form") that is approved for payment under the terms of this Stipulation.

I.     **Procedural History.**

This Action was filed by Named Plaintiff Avary Leigh in the United States District Court for the District of Maryland on January 27, 2010 against The Pepsi Bottling Group, Inc. ("PBG") The Complaint alleged failure to properly pay overtime wages in accordance with the FLSA. Named Plaintiff brought this Action as a Collective Action pursuant to Section 216(b) of the FLSA. PBG answered the Complaint, denying all material allegations, including the fact that PBG was the actual employer of the Potential Plaintiffs. The Parties subsequently agreed to substitute Bottling Group, LLC ("BG") as the actual employer and proper defendant in this

Action. The Parties also subsequently entered into a stipulation to toll the statute of limitations pending efforts to reach a resolution of the claims.

II.     **Investigation in the Action.**

The Parties have conducted an investigation of the facts and law during the prosecution of this Action. Such investigation has included, *inter alia*, the exchange of information through informal discovery, meetings and conferences between counsel for the Parties, and interviews of numerous potential witnesses. Counsel for the Parties have further invested extensive time investigating the applicable law as it relates to the Named Plaintiff's claims and damages, the defenses thereto, and the facts discovered. Named Plaintiff believes that the investigation and research discovered has supported his main contention that BG failed to pay the Potential Plaintiffs proper overtime wages as required by federal law. Named Plaintiff is demanding various amounts for wages, interest, attorneys' fees, and other damages. BG, on the other hand, contends the Potential Plaintiffs were properly paid all overtime wages that they were due, and believes that it would ultimately succeed in the Action.

III.    **Named Plaintiff's Reasons for Settlement.**

Named Plaintiff recognizes the expense and length of continued proceedings necessary to continue the litigation against Defendant through trial and through any possible appeals. Named Plaintiff is also familiar with the possibility that, absent a settlement, a Court would determine that his claims cannot proceed as a collective action on behalf of the Potential Plaintiffs. Named Plaintiff has also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Named Plaintiff is also aware of the burdens of proof necessary to establish liability for the Claims asserted in the Action (the "Claims" or "Collective Action Claims"), Defendant's defenses thereto, and the difficulties in

establishing damages for the Potential Plaintiffs. Named Plaintiff has also taken into account the settlement negotiations conducted, which negotiations ended in an agreement that forms the basis for this Stipulation. Based on the foregoing, Named Plaintiff has determined the Settlement set forth in this Agreement is a fair, adequate and reasonable settlement, and is in the best interests of the Potential Plaintiffs.

IV.     **Defendant's Reasons for Settlement.**

BG has concluded that any further defense of this litigation would be protracted and expensive for all Parties. Substantial amounts of time, energy and resources of BG have been and, unless this Settlement is made, will continue to be devoted to the defense of the Claims asserted by Named Plaintiff. BG has, therefore, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the Claims as set forth in the Action.

V.     **Named Plaintiff's Claims.**

Named Plaintiff claims that the Released Claims (as defined in Section VII, paragraph 3 below) have merit and give rise to liability on the part of BG. Neither this Agreement, the documents referred to or contemplated herein, nor any action taken to carry out this Agreement is, or may be construed or used as, an admission, concession, or indication by or against Named Plaintiff, or Plaintiffs' Counsel (as defined herein), as to the merits or lack thereof of the Claims asserted.

VI.     **Defendant's Denials of Wrongdoing.**

BG has denied and continues to deny each of the Claims and contentions alleged by Named Plaintiff in the Action. BG has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Action. BG also has denied and continues to

deny, *inter alia*, the allegations that Named Plaintiff and the Potential Plaintiffs have suffered damage; that BG failed to pay Named Plaintiff or any of the Potential Plaintiffs for all overtime to which they were entitled; that BG failed to pay Named Plaintiff or any of the Potential Plaintiffs for all hours worked; that BG engaged in any unlawful, unfair or fraudulent business practices; that BG engaged in any wrongful conduct as alleged in the Action; or that the Named Plaintiff or Potential Plaintiffs were harmed by the conduct alleged in the Action. Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is, may be construed as, or may be used as an admission, concession or indication by or against BG of any fault, wrongdoing or liability whatsoever.

VII.   **Stipulation.**

NOW, THEREFORE, IT IS HEREBY STIPULATED, by and among the Named Plaintiff on behalf of Potential Plaintiffs on the one hand, and BG on the other hand, and conditioned upon and subject to the approval of the District Court, that the Action is hereby being compromised and settled pursuant to the terms and conditions set forth in this Agreement. Upon the District Court's entry of a Final Judgment (as set forth below), the Action shall be dismissed with prejudice, subject to the recitals set forth hereinabove, which by this reference shall become an integral part of this Agreement and subject to the following terms and conditions:

1.   "Effective Date". As used in this Settlement, "Effective Date" means the date by which the District Court's Final Judgment ("Final Judgment" or "Judgment") approving this Settlement becomes final. For purposes of this paragraph, the District Court's Final Judgment "becomes final" upon the latter of: (i) the date of final affirmance on an appeal of the Final Judgment; (ii) the expiration of the time for a petition for a writ of certiorari to review the

Final Judgment and, if certiorari be granted, the date of final affirmance of the Final Judgment following review pursuant to that grant; (iii) the date of final dismissal of any appeal from the Final Judgment or the final dismissal of any proceeding on certiorari to review the Final Judgment; or (iv) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from the District Court's Final Judgment.

2.      Full Investigation.  Named Plaintiff has fully investigated the factual and legal bases for the causes of action asserted in the Action.  Defendant has denied that it failed to pay the Named Plaintiff and Potential Plaintiffs for all overtime wages due.  As a result of his investigation, Named Plaintiff continues to believe Defendant unlawfully failed to pay at least some of the Potential Plaintiffs proper overtime wages.  Given the disagreement between the Parties as to the viability of the Claims raised by the Named Plaintiff, the Parties believe the Settlement provided for herein is a fair, adequate, and reasonable settlement.

3.      Release As To All Settlement Collective Members.  As of the Effective Date, the Settlement Collective Members (as defined in Paragraph 8 herein), including the Named Plaintiff, release BG and each of its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and its and their respective successors and predecessors in interest, subsidiaries, affiliates, parents and attorneys and each of their company-sponsored employee benefit plans and all of their respective officers, directors, employees, administrators, fiduciaries, trustees and agents (the "Released Parties"), from the "Released Claims."  For purposes of this Agreement, the "Released Claims" are defined as:

a.      all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever,

b.      known or unknown, asserted or that might have been asserted,

c.      whether in tort, contract, or for violation of any state or federal constitution, statute, rule or regulation, including federal wage and hour laws,

d.      whether for economic damages, non-economic damages, restitution, penalties or liquidated damages,

e.      arising out of, relating to, or in connection with:

(1) any and all facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of claims (a) that Bottling Group failed to compensate the Potential Plaintiffs for all hours worked, including overtime hours, in accordance with federal law; and/or (b) that Bottling Group owes wages, commissions, penalties, interest, attorneys' fees or other damages of any kind based on a failure to comply with any federal wage and hour laws, at any time on or before the last day of the Collective Period (whether based on federal wage and hour law, contract, or otherwise); and/or

(2) the causes of action asserted, or which could have been asserted, in the Collective Action, including any and all claims for alleged failure to compensate Potential Plaintiffs for all hours worked, including overtime hours, in accordance with state or federal law.

The Released Claims include any unknown claims the Settlement Collective Members do not know or suspect to exist in their favor at the time of the release, which, if known by them, might have affected their settlement with, and release of, the Released Parties or might have affected their decision not to object to this Settlement.

The Settlement Collective Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the

Released Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts regarding the Released Claims.

The Settlement Collective Members agree not to sue or otherwise make a claim against any of the Released Parties that is in any way related to the Released Claims.

4. <u>General Release By Named Plaintiff Only.</u> In addition to the releases made by the Settlement Collective Members set forth in Paragraph 3 hereof, as of the Effective Date, the Named Plaintiff makes the additional following general release of all claims, known or unknown. The Named Plaintiff releases the Released Parties from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, contract, or for violation of any state or federal statute, rule or regulation arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the Effective Date. (The release set forth in this Paragraph 4 shall be referred to hereinafter as the "General Release").

The General Release includes any unknown claims the Named Plaintiff does not know or suspect to exist in his favor at the time of the General Release, which, if known by him, might have affected his settlement with, and release of, the Released Parties by the Named Plaintiff or might have affected his decision not to object to this Settlement or the General Release.

The Named Plaintiff may hereafter discover facts in addition to or different from those he

now knows or believes to be true with respect to the subject matter of the General Release, but the Named Plaintiff upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the General Release, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

5.    Settlement Fund. The term "Settlement Fund" shall refer to the maximum funds that BG may be required to distribute under the terms of this Settlement in accordance with Paragraphs 6-9 below. The Settlement Fund has a maximum possible value of Six Hundred Twenty-Five Thousand and Sixty Six Dollars ($625,066).

6.    Fees Award and Incentive Award. The Parties agree to the designation of Kramer & Crone, PLC and O'Malley, Miles, Nylen & Gilmore, P.A.. as "Plaintiffs' Counsel."

At or before the Approval Hearing (as set forth in Paragraph 13 below), Plaintiffs' Counsel will request that the District Court approve an award of attorneys' fees and costs in an amount not to exceed Two Hundred Thousand Dollars ($200,000) ("Fees Award") to be paid out of the Settlement Fund. Defendant will not oppose this request. If the Court grants approval of the Fees Award, one half of the Fees Award ($100,000) shall be paid from the Settlement Fund within five (5) business days after the Court grants such approval, and the remaining one half of the Fees Award ($100,000) shall be paid from the Settlement Fund within five (5) business days after the Effective Date. If the District Court does not approve the full Fees Award at or before

the time the Court issues its Final Judgment, the remainder shall revert to BG.

Plaintiffs' Counsel shall not be permitted to petition the Court for, or accept, any additional payments for fees, costs, or interest, and the Fees Award shall be for all claims for attorneys' fees and costs past, present and future incurred in the Action. BG's payment of the Fees Award to Plaintiffs' Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of the Named Plaintiff and/or the Potential Plaintiffs. Further, said payment shall relieve BG, the Claims Administrator, the Settlement Fund, and BG's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of the Named Plaintiff and/or the Potential Plaintiffs.

At or before the Approval Hearing, Plaintiffs' Counsel will request that the Court approve an incentive award in an amount not to exceed Nine Thousand Dollars ($9,000) to Named Plaintiff Avary Leigh ("Incentive Award"). Defendant will not oppose this request. The Incentive Award shall be paid from the Settlement Fund within five (5) business days after the Court grants such approval. Named Plaintiff's Incentive Award will not be taxed as wages. Named Plaintiff will receive a 1099 form relating to the Incentive Award. If at some future date it should be claimed or determined that any tax withholding should have been made by Defendant or tax payment made by Named Plaintiff resulting from or relating to the settlement of this case, Named Plaintiff agrees to be solely liable for and pay all taxes, penalties, and assessments. Named Plaintiff also agrees to indemnify and hold Defendant harmless from any costs, penalties, and assessments to which Defendant may be subject by reason of its payment in settlement of this case.

7.      Allocation of Settlement Fund. The Settlement Fund shall be allocated among these elements: (a) the Fees Award to Plaintiffs' Counsel, in an amount not to exceed Two Hundred Thousand Dollars ($200,000); (b) the Incentive Award to Named Plaintiff, in an amount not to exceed Nine Thousand Dollars ($9,000); (c) the claims administration expenses, in an amount not to exceed Fifteen Thousand Dollars ($15,000); and (d) the total amount for payments to Settlement Collective Members of the Gross Settlement Amounts less deductions as explained in this paragraph and in Paragraph 8 below (the "Payout Fund"). The Payout Fund shall have a maximum possible value of Four Hundred and One Thousand and Sixty-Six Dollars ($401,066).

8.      Plan of Allocation for Payment to Settlement Collective Members. Within five (5) business days after the Effective Date, and solely for purposes of this Settlement, Defendant shall cause the Claims Administrator to pay the Settlement Awards (as hereinafter defined) to the Settlement Collective Members in accordance with the following eligibility and settlement formula requirements.

a.      All Potential Plaintiffs will be eligible to submit a claim for a "Settlement Award" (as defined below). If a Potential Plaintiff submits a timely and properly completed Claim Form/FLSA Consent Form ("Claim Form") (attached as Exhibit 2 hereto) then the Potential Plaintiff will become a "Settlement Collective Member." Defendant will pay Settlement Awards to all Settlement Collective Members. The Gross Settlement Amounts of these Settlement Awards will be calculated as follows: The Payout Fund will be divided by all weeks worked in the Covered Positions during the Collective Period based on Defendant's records. This calculation will result in a gross amount per workweek ("Gross Workweek Amount"). The Gross Settlement Amount for each Settlement Collective Member will be

determined by multiplying the individual Settlement Collective Member's weeks worked in a Covered Position by the Gross Workweek Amount ("Gross Settlement Amount"). The Defendant's records for each Potential Plaintiff and Settlement Collective Member will be dispositive. The Claims Administrator shall calculate the Gross Workweek Amount and Gross Settlement Amounts no later than fifteen (15) days after last date of the Collective Period.

           b.     The Gross Settlement Amount is the maximum amount to which each Settlement Collective Member is entitled. If a Potential Plaintiff fails to submit a Claim Form, he or she will not be a Settlement Collective Member and will not receive any Gross Settlement Amount.

           c.     Accordingly, if each Potential Plaintiff submits a timely and properly completed Claim Form, then the total amount of the Payout Fund shall be distributed to Settlement Collective Members. If all Potential Plaintiffs do not submit timely and properly completed Claim Forms, Defendant will not pay the full amount of the Payout Fund allocated for the Settlement Collective Members.

           d.     From each Settlement Collective Member's Gross Settlement Amount, deductions will be made, for state and federal taxes owed by BG as a result of the payment and for any applicable payroll deductions required to be made by BG as a result of the payment. The resulting amount will be each Settlement Collective Member's "Gross Wage Component." From each Settlement Collective Member's Gross Wage Component, payroll deductions will be made for state and federal withholding taxes and any other applicable payroll deductions owed by the Settlement Collective Member as a result of the payment, resulting in a "Net Settlement Amount." The Net Settlement Amount that will be paid to each Settlement Collective Member is the Settlement Collective Member's "Settlement Award."

9.    Responsibilities of BG. BG shall:

a.    Provide to the Claims Administrator, no later than ten (10) days after last day of the Collective Period, the name, social security number, last known telephone number, last known address, and eligible workweeks for all Potential Plaintiffs. The Claims Administrator shall keep this information confidential and shall not disclose this information to Plaintiffs' Counsel, Named Plaintiff or any other persons.

b.    Cause the Claims Administrator to establish a Settlement Account (either a separate checking account or separate ledger entry, at BG's selection), and timely fund any checks written upon the Settlement Account to pay the Fees Award, Incentive Award and Settlement Awards;

c.    Cause the Claims Administrator to pay the Fees Award and Incentive Award in accordance with this Agreement and the District Court's Approval Order, Final Judgment and any other orders entered by the Court in this action;

d.    Cause the Claims Administrator to pay Settlement Awards in accordance with this Agreement and the District Court's Approval Order, Final Judgment and any other orders entered by the Court in this action; and

e.    Pay the Claims Administrator for all costs and expenses of administering this Settlement from the Settlement Account, after the completion of the claims administration process, or on a different schedule agreed upon by BG and the Claims Administrator.

10.    Operation of the Settlement Fund.

a.    At no time shall BG have the obligation to segregate the funds comprising the Settlement Fund from its other assets, and BG will retain exclusive authority over, and responsibility for, those funds.

b.      The Claims Administrator will calculate the Settlement Awards to be paid to the Settlement Collective Members from the Payout Fund in accordance with the terms and provisions of this Agreement.

c.      The Claims Administrator shall have the authority and obligation to make payments, and credits and disbursements, including payments and credits in the manner set forth herein, to Settlement Collective Members from the Payout Fund in accordance with the methodology set out in this Agreement and orders of the District Court.

d.      To the extent any tax returns must be filed for the Settlement Fund pursuant to this Agreement, the Claims Administrator shall cause to be timely and properly filed all informational and other tax returns, if any, necessary with respect to the Settlement Fund. Such returns shall be consistent with this paragraph. The Parties do not believe the Settlement Fund will generate any taxable income. However, if any taxable income is generated by the Settlement Fund, the tax returns filed shall reflect that all taxes payable on the taxable income of the Settlement Fund, if any, shall be paid by BG. Any expenses consisting of the expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, reasonable expenses of tax attorneys, accountants or other designees retained by BG and/or the Claims Administrator as required for the preparation and filing of tax returns described in this paragraph) shall be treated as, and considered to be, a cost of administration of the Settlement.

e.      No person or entity shall have any claim against BG, BG's Counsel, the Named Plaintiff, Potential Plaintiffs, Settlement Collective Members, Plaintiffs' Counsel or the Claims Administrator based on distributions and payments made in accordance with this Agreement.

f.      The maximum amount BG can be required to pay under this

Settlement for any purpose is the amount of the Settlement Fund.

11.     Prospective Relief. Effective no later than January 1, 2011, BG will

modify the way in which it compensates the individuals in the Covered Positions to address the

concerns raised in the Complaint. At BG's sole discretion, these changes may be made all at

once, or by region, or by Market Unit, at different times, so long as the changes are all made no

later than January 1, 2011. Regardless of whether this Settlement is approved, not approved,

terminated, canceled or otherwise fails to become effective for the reasons specified in this

Stipulation, any change in BG's compensation system pursuant to this Agreement shall not be

used as an admission by or against BG or any of the other Released Parties of any fault,

wrongdoing or liability whatsoever, and shall not be deemed an admission, or used as evidence

to prove, that individuals in the Covered Positions are, or ever were, not-exempt from state or

federal overtime laws.

12.     Injunctive Relief. As part of this Settlement, Defendant shall not be

required to enter into any consent decree, nor shall Defendant be required to agree to any

provision for injunctive relief.

13.     Notice/Approval of Settlement and Settlement Implementation. As part of

this Settlement, the Parties agree to the following procedures for obtaining District Court

approval of the Settlement, notifying Potential Plaintiffs, obtaining final judgment, and

processing the settlement payments:

a.      Submission to the District Court for Approval and Certification of

the Collective Class. Named Plaintiff shall submit this Agreement, which sets forth the terms of

this Settlement, as well as proposed forms of all notices and other documents as attached hereto

necessary to implement the Settlement for District Court approval. In conjunction with this filing, Named Plaintiff shall also submit a proposed order seeking certification of the Collective Action, approval of the Settlement, and approval of the notification and administration process ("Approval Order") (attached as Exhibit 3 hereto). The Approval Order shall provide for notice of the Settlement and related matters to be sent to Potential Plaintiffs as specified herein.

          b.    Approval Hearing. Simultaneous with the filing of the Stipulation and Settlement and solely for purposes of this Settlement, the parties will request that the District Court conduct an Approval Hearing ("Approval Hearing"), to the extent the Court deems such a hearing is necessary. At the Approval Hearing, the parties will request the Court enter an order permitting the FLSA claims to proceed as a Collective Action, approving the Settlement, and ordering the parties to carry out the Notice and Claims process set forth in this Stipulation.

          c.    Notice to Potential Plaintiffs. Notice of the Settlement shall be provided to Potential Plaintiffs giving them the right to consent to join this lawsuit's settlement.

          (1)    Claims Administrator. Rust Consulting, 625 Marquette Avenue, Minneapolis, MN 55402-5616, (612) 359-2000 (hereinafter "Rust" or the "Claims Administrator"), shall be retained to serve as Claims Administrator. The Claims Administrator shall be responsible for preparing, printing and mailing the Notice ("Notice") (attached as Exhibit 1 hereto) and the Claim Form/FLSA Consent Form ("Claim Form/FLSA Consent Form" or "Claim Form") (attached as Exhibit 2 hereto) as directed by the District Court to the Potential Plaintiffs, receiving and reviewing the Claim Forms submitted by Potential Plaintiffs to determine eligibility for payment as a Settlement Collective Member and the amount of any such payment, along with the amount of all payroll tax deductions to be withheld, drafting and mailing Settlement Award checks to Settlement Collective Members, and for such other tasks as

the Parties mutually agree or the District Court orders the Claims Administrator to perform. The Parties each represent they do not have any financial interest in the Claims Administrator or otherwise have a relationship with the Claims Administrator that could create a conflict of interest. Defendant shall be responsible for paying all agreed Claims Administrator's Administration Fees upon presentation of invoices by the Claims Administrator. Defendant shall also be responsible for paying over to the Claims Administrator at such times as requested by the Claims Administrator those amounts necessary to enable the Claims Administrator to pay Settlement Collective Members.

(2)     Notice By First-Class Mail. Within twenty (20) days after the close of the Collective Period, the Claims Administrator shall send a copy of the Notice (attached as Exhibit 1 hereto ), together with the Claim Form/FLSA Consent Form (attached as Exhibit 2 hereto), to all Potential Plaintiffs via First Class regular U.S. mail, using the most current mailing address information for Potential Plaintiffs as provided by Defendant to the Claims Administrator from Defendant's payroll records. Any Notices returned to the Claims Administrator as non-delivered, shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, then the Claims Administrator shall promptly attempt to determine a correct address using a single computer or other search using the social security number of the individual involved and will then attempt to send the Notices to the new address. The Claims Administrator will re-mail all returned, undelivered mail within five (5) business days of receiving notice that a Notice was undeliverable. The Parties agree that this procedure is the best notice practicable under the circumstances.

d.     No Solicitation. The Parties agree to use their best efforts to carry out the terms of this Settlement. At no time shall any of the Parties or their counsel seek to

discourage any of the Potential Plaintiffs from submitting a timely Claim Form. Plaintiffs'

counsel agrees not to seek to represent any Potential Plaintiff who does not opt-into the

Settlement for the purpose of pursuing any civil or administrative action against BG or any of the

Released Parties for the claims asserted in this Action. If any Potential Plaintiff does not opt-into

this Settlement and become a Settlement Collective Member and pursues any civil or

administrative action against the Released Parties, and Plaintiffs' Counsel (individually or

collectively) represents that person, Plaintiffs' Counsel waives any fees and costs that that

he/she/they might otherwise obtain (either by way of judgment, award, or settlement) for

representing that person. Nor will Plaintiffs' Counsel obtain any benefit from, either formally or

informally, any such judgment, award, or settlement.

        e.    <u>Entry of Final Judgment.</u> Upon expiration of the Claim Deadline

(as defined in paragraph 14(a) of the Stipulation), the parties shall submit a report to this Court

from the Claims Administrator detailing the number and dollar value of claims submitted by

Settlement Class Members, and certifying that the Notice and Claims process has been

completed in compliance with this Stipulation and the Court's Approval Order. In conjunction

with this filing, the parties shall present a Final Judgment and Order of Dismissal with Prejudice

("Final Judgment") (substantially in the form attached as Exhibit 4 hereto) to the District Court.

        14.    <u>Procedure for Payment of Settlement Awards.</u>

        a.    All Settlement Collective Members who have submitted a valid

and timely Claim Form will receive a Settlement Award from Defendant. Defendant reserves

the right to have the Claims Administrator produce and mail the Settlement Awards to the

Settlement Collective Members. The Claim Form shall include instructions on how to submit

the form, and shall notify Potential Plaintiffs that the Claim Form must be completed, signed and

postmarked no later than forty-five (45) days after the date the Claim Form was mailed (the

"Claim Deadline") for a Potential Plaintiff to become a Settlement Collective Member and be eligible to receive any Settlement Award.  Twenty (20) days before the Claim Deadline, the Claims Administrator will send a follow-up notice to all Potential Plaintiffs who have not responded with a Claim Form reminding them of the requirement to send a completed Claim Form by the Claim Deadline.  The date of the postmark on the return envelope (or "received" stamp in the event of personal delivery) shall be the exclusive means used to determine whether a Potential Plaintiff has "timely" returned his/her Claim Form on or before the Claim Deadline. Claim Forms received by the Claims Administrator that have been postmarked after the Claim Deadline shall be disregarded.

      b.      For purposes of this Agreement, a Claim Form shall be deemed "valid" only if:  (1) the Potential Plaintiff has provided on the Claim Form his or her name and first five digits of his/her Social Security Number; (2) the Potential Plaintiff has dated and signed the Claim Form; and (3) the name and first five digits of his/her Social Security Number provided by the Potential Plaintiff on the Claim Form match BG's records as provided to the Claims Administrator.  If any submitted Claim Form is defective as to any of these three requirements, the individual shall be given an opportunity to cure the defect(s).  Any such defective Claim Form shall be returned to the individual, who will be informed of the defect(s), how to correct the defect(s) and the deadline to do so.  The individual will be given ten (10) days from the date the Claim Form was mailed back to him/her within which to cure the defect(s) and return the Claim Form to the Claims Administrator.  If the revised Claim Form is not postmarked within that ten (10) day period, it shall be deemed untimely and the claim will be rejected.  The name and first five digits of the Social Security Number provided by the Potential Plaintiff will be deemed to match BG's records only if:  (1) both the first name and the last name and the first

five digits of the Social Security Number provided by the Potential Plaintiff match BG's records; or (2) the first name and the first five digits of the Social Security Number provided by the Potential Plaintiff match BG's records and it appears the last name has been changed as a result of a change in marital or domestic partner status.

c. Settlement Awards for Settlement Collective Members shall be paid pursuant to the settlement formula set forth herein within five (5) business days after the Effective Date ("Check Mailing Date"). The Claims Administrator's determination of eligibility, and the amounts of any Settlement Awards under the terms of this Agreement, shall be conclusive, final and binding on all Parties, including all Settlement Collective Members.

d. Any checks paid to Settlement Collective Members shall remain valid and negotiable for ninety (90) days from the date of their issuance ("Check Stale Date") and shall thereafter automatically be canceled if not cashed by a Settlement Collective Member within that time, at which time the Settlement Collective Member's claim will be deemed void and of no further force and effect. For any checks that are returned with a forwarding address, the Claims Administrator shall send the check to that forwarding address. For any checks that are returned with no forwarding address, the Claims Administrator shall attempt to determine a correct address by using a single computer or other search. If the Claims Administrator obtains a new address, then the check shall be mailed to that new address. In the event these procedures are utilized and the person does not receive the check, no additional steps are required.

f. Upon completion of administration of the Settlement, on or before the date one hundred twenty (120) days after the Check Mailing Date, the Claims Administrator shall provide written certification of such completion to the District Court and counsel for all Parties, as provided herein.

15.     Named Plaintiff's Obligations.  Named Plaintiff agrees to not disparage the Settlement to Potential Plaintiffs or encourage, in any way, Potential Plaintiffs to not timely submit a Claim Form/FLSA Consent Form.

16.     Administration Costs.  All of BG's own legal fees, costs and expenses incurred in the Action shall be borne by BG.  Claims administration expenses will be part of the Settlement Fund.  The Parties agree to cooperate in the Settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

17.     Nullification of Settlement Agreement.  In the event that: (i) the District Court does not approve the Settlement as provided herein; (ii) the District Court does not enter an Approval Order; (iii) the District Court does not enter a Final Judgment as provided herein which becomes final as a result of the occurrence of the Effective Date; or (iv) the Settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void *ab initio*.  In such a case, the Parties shall proceed in all respects as if this Settlement Agreement had not been executed and BG will not make any payments under this Settlement Agreement, except that any fees already incurred by the Claims Administrator shall be paid for by BG and shall not be repaid to BG.  In the event an appeal is filed from the District Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

18.     Appraisal and Certification By Claims Administrator.  The Claims Administrator shall keep BG's counsel apprised (on a weekly basis) of all distributions from the

Settlement Fund and, upon completion of administration of that portion of the Settlement, the Claims Administrator shall provide written certification of such completion to the District Court and counsel for all Parties. The Claims Administrator shall further provide to BG's counsel weekly status updates of how many claims were filed, returned undeliverable, etc.

19.     No Effect on Employee Benefits. The Incentive Award and Settlement Awards paid to the Named Plaintiff and Settlement Collective Members shall be deemed not to be pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any of the employee benefits (e.g., vacations, holiday pay, retirement plans, etc.) of the respective Named Plaintiff or Settlement Collective Members. The Parties agree that any Incentive Award and Settlement Awards paid to Named Plaintiff and Settlement Collective Members under the terms of this Agreement do not represent any modification of Named Plaintiff's or Settlement Collective Members' previously credited hours of service, or other eligibility criteria, under any employee pension benefit plan or employee welfare benefit plan sponsored by BG. Further, any Incentive Award or Settlement Awards hereunder shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by BG. BG will not take 401k or other benefits deductions from any Incentive Award or Settlement Award.

20.     Privacy of Documents and Information. Named Plaintiff and Plaintiffs' Counsel agree none of the documents and information provided to them by BG shall be used for any purpose other than prosecution of the Action.

21.     Confidentiality Prior to Approval. Plaintiffs' Counsel agrees that prior to the District Court's Approval of this Settlement, they will keep confidential the terms of this Settlement except for purposes of communicating with Named Plaintiff only. The Named

Plaintiff shall be informed that the Settlement is confidential up to the District Court's Approval and shall be advised to keep this Settlement confidential. The disclosure of this information to any other person shall constitute a breach of this Agreement. Prior to the District Court's Approval, Plaintiffs' Counsel may not communicate the terms of this Settlement to Potential Plaintiffs, other than the Named Plaintiff, including on websites. Notwithstanding the foregoing, the Parties may discuss the terms of the Settlement in any papers filed with the Court relating to approval of the Settlement.

22.    <u>Limited Publicity Following Approval</u>. From and after the District Court's Approval, Named Plaintiff, and Plaintiffs' Counsel may: (1) as required by law; or (2) as required under the terms of this Agreement, comment regarding the specific terms of this Agreement. In all other cases, the Named Plaintiff, and Plaintiffs' Counsel agree to limit their statements regarding the terms of this Agreement, whether oral, written or electronic (including the world wide web), to say the Action has been resolved and that Named Plaintiff and Plaintiffs' Counsel are satisfied with the settlement terms. Neither the Named Plaintiff, nor Plaintiffs' Counsel shall hold any press conference or make any press release related in any way to the Settlement. Nothing in this paragraph is intended to interfere with Plaintiffs' Counsel's duties and obligations to faithfully discharge their duties as Plaintiffs' Counsel, including but not limited to answering questions from Potential Plaintiffs.

23.    <u>No Admission By the Released Parties</u>. BG and the Released Parties deny any and all claims alleged in the Collective Action and deny all wrongdoing whatsoever. This Agreement is not a concession or admission, and shall not be used against BG or any of the Released Parties as an admission or indication with respect to any claim of any fault, concession or omission by BG or any of the Released Parties. Whether or not the Settlement is approved,

neither the Settlement, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be:

A.     construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Released Parties, including, but not limited to, evidence of a presumption, concession, indication or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession or damage; or

B.     disclosed, referred to or offered or received in evidence against any of the Released Parties, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding, except for purposes of settling the Action pursuant to this Agreement or enforcing the terms of this Stipulation.

24.     CIRCULAR 230 DISCLAIMER. EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR SHALL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO

THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY
OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT
ENTITLED TO RELY UPON ANY COMMUNICATION OR DISCLOSURE BY ANY
ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY
THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO
ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION
THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR
ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS
LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF
THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING
ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

25.   Exhibits and Headings. The terms of this Agreement include the terms set
forth in any of the attached Exhibits 1-4, which are incorporated by this reference as though fully
set forth herein. Any Exhibits to this Agreement are an integral part of the Settlement. The
descriptive headings of any paragraphs or sections of this Agreement are inserted for
convenience of reference only and do not constitute a part of this Agreement.

26.   Interim Stay of Proceedings. The Parties agree to hold all proceedings in
the Action, except such proceedings necessary to implement and complete the Settlement, in
abeyance pending the Approval Hearing to be conducted by the District Court.

27.   Amendment or Modification. This Agreement may be amended or
modified only by a written instrument signed by counsel for all Parties or their successors-in-
interest.

28.   Entire Agreement. This Agreement and the four attached Exhibits,

constitute the entire agreement among these Parties, and no oral or written representations, or warranties or inducements have been made to any Party concerning this Agreement or its Exhibits, other than the representations, warranties and covenants contained and memorialized in such documents.

29.   <u>Authorization to Enter Into Settlement Agreement</u>.  Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Agreement, and to take all appropriate action required or permitted to be taken by such Parties (including the execution of any other documents) pursuant to this Agreement to effectuate the terms of said Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.

30.   <u>Binding on Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

31.   <u>Governing Law</u>.  All terms of this Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of Maryland.

32.   <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts and transmitted via email or facsimile.  All executed counterparts, their copies and each of them, shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

33.   <u>This Settlement is Fair, Adequate and Reasonable</u>.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of the Action, and have arrived at this Settlement in arms-length negotiations taking into account all relevant factors, present and potential.  This Settlement was reached after extensive negotiations.

34.     <u>Jurisdiction of the District Court.</u> After the District Court enters a Final Judgment, the District Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement, and all orders and judgments entered in connection therewith. The Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement, and all orders and judgments entered in connection therewith.

35.     <u>Cooperation and Drafting</u>. Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction made to this Agreement, the same shall not be construed against any of the Parties.

36.     <u>Invalidity of Any Provision</u>. Before declaring any provision of this Agreement invalid, the District Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

Dated:  September ___, 2010

      Alan G. Crone
      Kramer & Crone, PLC
      Brinkley Plaza
      80 Monroe Avenue, Suite G-1
      Memphis, TN 38103
      Phone: (901) 524-0200
      Fax: (901) 523-0043
      acrone@kramercrone.com

      John C. Fredrickson
      O'Malley, Miles, Nylen, & Gilmore, P.A.
      11785 Beltsville Drive, 10th Floor
      Calverton, MD 20705
      Phone: (301)572-1935
      Fax: (301) 572-6655
      jfredrickson@omng.com

      *Attorneys for Plaintiffs*

Dated:  September ___, 2010

      Avary Leigh

      *Named Plaintiff*

Dated:  September 13, 2010

      Guy N. Halgren
      Sheppard Mullin Richter & Hampton, LLP
      501 W. Broadway, Suite 1900
      San Diego, CA  92101-3598
      Phone: (619) 338-6605
      Fax: (619) 234-3815
      ghalgren@sheppardmullin.com

      Emily S. Costin
      Sheppard Mullin Richter & Hampton, LLP
      1300 I Street, NW, 11th Floor East
      Washington, D.C.  20005-3314
      Phone: (202) 772-5359
      Fax: (202) 312-9447
      ecostin@sheppardmullin.com

      *Attorneys for Defendant*

Dated:  September ___, 2010

_____
Alan G. Crone
Kramer & Crone, PLC
Brinkley Plaza
80 Monroe Avenue, Suite G-1
Memphis, TN 38103
Phone: (901) 524-0200
Fax: (901) 523-0043
acrone@kramercrone.com

John C. Fredrickson
O'Malley, Miles, Nylen, & Gilmore, P.A.
11785 Beltsville Drive, 10th Floor
Calverton  MD 20705
Phone: (301)572-1935
Fax: (301) 572-6655
jfredrickson@omng.com

*Attorneys for Plaintiffs*

Dated:  September ___, 2010

_____
Avary Leigh

*Named Plaintiff*

Dated:  September ___, 2010

_____
Guy N. Halgren
Sheppard Mullin Richter & Hampton, LLP
501 W. Broadway, Suite 1900
San Diego, CA  92101-3598
Phone: (619) 338-6605
Fax: (619) 234-3815
ghalgren@sheppardmullin.com

Emily S. Costin
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, NW, 11th Floor East
Washington, D.C.  20005-3314
Phone: (202) 772-5359
Fax: (202) 312-9447
ecostin@sheppardmullin.com

*Attorneys for Defendant*

Dated: September 13, 2010

Lynn Holley

Bottling Group, LLC

By: Senior Counsel

*Defendant*