## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND
#### (Southern Division)

| | |
|---|---|
| **AVARY LEIGH,** *individually and on behalf of all similarly situated persons,* ) <br><br> **Plaintiff,** ) <br><br> **v.** ) <br><br> **BOTTLING GROUP, LLC ,** ) <br><br> **Defendant.** ) | C.A. No. 8:10-cv-00218 (DKC) |

## PLAINTIFFS' REVISED SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MOTION TO APPROVE SETTLEMENT

COMES NOW the Plaintiff, Avary Leigh, on behalf of himself and all others similarly situated, by and through undersigned counsel, at the request of the Court to supplement and address the issue of reasonableness of the requested amount of attorneys' fees and expenses and therefore submits this his Revised Second Supplemental Memorandum in Support of Plaintiff's Supplemental Motion to Approve Settlement, in which he states as follows:

In addition to the considerations Plaintiff detailed in his Memorandum of Law in Support of Unopposed Motion to Approve Settlement of FLSA Claims (Docket No. 20) (hereinafter "Plaintiff's First Memo") and also detailed in his Memorandum in Support of Plaintiff's Supplemental Motion to Approve Settlement (Docket No. 26) (hereinafter "Plaintiff's Second Memo"), and his Second Supplemental Memorandum in Support of Plaintiff's Supplemental Motion to Approve Settlement (Docket No. 44) Plaintiff would show that (1) the percentage of the fund method is common in FLSA attorney's awards and should be used in the case at bar, but (2) in light of this Court's opinion in *Lane v. Ko-Me, LLC,* Civil Action No. 10-2261, 2011 WL

3880427 (D. Md. Aug. 31, 2011) (copy attached hereto as "Exhibit A"), a cross-check

application of a lodestar calculation also supports the attorney's fees requested by Plaintiff.

## I.   **<u>Plaintiff's Attorney's Fees Should Be Based on a Percentage of the Common Fund.</u>**

As pointed out in Plaintiff's First Memo, attorney's fees in class action settlements are

often awarded as a percentage of the common settlement fund.  At least eight Circuits have

approved this approach in various types of class action litigation: the First Circuit in *In re*

*Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305

(1st Cir. 1995); the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49-

50 (2nd Cir. 2000); the Third Circuit in *In re General Motors Corp. Pick-Up Truck Fuel Tank*

*Products Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); the Sixth Circuit in *Rawlings v.*

*Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); the Seventh Circuit in

*Harmon v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); the Eighth Circuit in *Johnston v.*

*Comerica Mortgage Corp.*, 83 F.3d 241, 244-46 (8th Cir. 1996); the Ninth Circuit in *Paul,*

*Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); and the Tenth Circuit in

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

While the Fourth Circuit has apparently not ruled conclusively on which method to adopt

in common fund cases when determining attorney's fees, the percentage-of-the-fund approach or

the lodestar method, neither has this Circuit ruled that the percentage-of-the fund approach

cannot be used.  *See Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D.N.C. 2002) (noting that

"[t]he Fourth Circuit has not determined the preferred method of calculating attorneys' fees

where a common fund has been generated on behalf of a class"); *Goldenberg v. Marriott PLP*

*Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998); *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d

455, 462-64 (S.D. W. Va. 2010) (stating that "[c]ourts have increasingly favored the percentage

method for calculating attorneys' fees in common fund cases," applying this method, and also

using an informal lodestar cross-check). In *Goldenberg*, this Court stated as follows:

> In approving the original fee request, the Court observed that the Fourth
> Circuit has not decided which of the two general approaches to adopt. *But see
> Daly v.* Hill, 790 F.2d 1071 (4th Cir. 1986) (involving fee-shifting statute rather
> than common fund). A few recent decisions within this Circuit, however, have
> endorsed the percentage method. Thus in *Strang v. JHM Mortgage Sec. Ltd.
> Partnership*, 890 F. Supp. 499, 502 (E.D. Va. 1995), the Virginia Federal Court
> held that although the Fourth Circuit has not yet ruled on this issue, the current
> trend among the courts of appeal favors the use of a percentage method to
> calculate an award of attorneys' fees in common fund cases. In adopting the
> percentage method, the *Strang* court noted that "the percentage method is more
> efficient and less burdensome than the traditional lodestar method, and offers a
> more reasonable measure of compensation for common fund cases." *Id.* at 503.
> On the basis of this authority, the Court in the present case found the percentage
> method simpler, more efficient, and more accurate in terms of approximating a
> "fair" award. *Accord, Edmonds v. U.S.*, 658 F. Supp. 1126 (D.S.C. 1987).

33 F. Supp. 2d at 438. The *Teague* court stated that, "although the Supreme Court has not

addressed the issue, it has been noted that in every case before it involving a common fund, that

Court has applied the percentage method." *Id.* (citation omitted).

Finally, at least one district court in this Circuit has applied the percentage-of-the-fund

approach to an FLSA collective action settlement.[1] *Kidrick v. ABC Television & Appliance

Rental, Inc.*, No. 3:97CV69, 1999 WL 1027050 (N.D. W. Va. May 12, 1999) (copy attached

hereto as "Exhibit B"). In *Kidrick*, the court approved the use of this method:

> The settlement of this case created a single, common fund to be used for
> damages, attorney's fees and expenses. Where there is a common fund in a class
> settlement, application of a percentage method to calculate an attorney's fee
> award is now favored. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);
> *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir.
> 1991). Calculating fees based upon a percentage of the settlement fund "is more
> efficient and less burdensome than the traditional lodestar method, and offers a
> more reasonable measure of compensation for common fund cases. *Strang v.
> JHM Mortgage Securities Limited Partnership*, 890 F. Supp. 499, 502-503 (E.D.
> Va. 1995) (citations omitted). *See also*, Court Awarded Attorney Fees, Report of

---

[1] The settlement also included a normal opt-out class action. *Kidrick*, 1999 WL 1027050, at *3.

the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985) (recommending calculation of fees in common fund class settlements using a percentage of the fund).

1999 WL 1027050, at *1. In fact, the *Kidrick* court went on to find that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable."[2] *Id.* at *2. Consequently, this Court has authority to use a percentage-of-the-fund approach to award fees in the instant action, and it can also look to precedent supporting the percentage amount requested by Plaintiff.

## II.    **Plaintiff's Requested Attorney's Fees Are Appropriate Using the Lodestar Method**.

While this Court may use the percentage-of-the-fund approach, Plaintiff notes that, in

*Lane v. Ko-Me, LLC*, Civil Action No. 10-2261, 2011 WL 3880427 (D. Md. Aug. 31, 2011), this

Court has indicated that it might use the lodestar method (The Lodestar Cross-Check Method).

According to the Court,

> Accordingly, the reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." In making that assessment, courts typically "use the principles of the traditional lodestar method as a guide." The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.

*Id.* at *3. In addition, some courts in this Circuit have used the percentage-of-the-fund method in

class action settlements, but also applied an informal lodestar cross-check. *Kay Co. v. Equitable*

---

[2] Several courts have found attorney's fee awards in the range of 30% appropriate in common fund cases. *Montague v. Dixie Nat'l Life Ins. Co.*, Civil Action No. 3:09-00687-JFA, 2011 WL 3626541, at *3 (D.S.C. Aug. 17, 2011) ("A 33% fee award from the common fund in this case is consistent with what is routinely privately negotiated in contingency fee litigation.") (copy attached as "Exhibit C"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S., 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.") (copy attached as "Exhibit D"); *Rowe v. E.I. Dupont De Nemours & Co.*, Civil Nos. 06-1810 (RMB/AMD), 06-3080 (RMB/AMD), 2011 WL 3837106, at *22 (D.N.J. Aug. 26, 2011) ("[T]he Court finds an award of 33.33% to be reasonable.") (copy attached as "Exhibit E"); *In re Employee Benefit Plans Securities Litig.*, Civ. No. 3-92-708, 1993 WL 330595, at *7 (D. Minn. June 2, 1993) ("Based upon a review of cases which have awarded attorney's fees under the 'common fund' approach, the Court finds that an award of 33 1/3 % of the common fund is reasonable.") (copy attached as "Exhibit F"); *In re Cell Pathways, Inc., Securities Litig. II*, No. 01-CV-1189, 2002 WL 31528573, at *11 (E.D. Pa. Sept. 23, 2002) ("In fact, thirty percent is very close to other fee awards that have been made by courts in this District.") (copy attached as "Exhibit G").

*Prod. Co.*, 749 F. Supp. 2d 455, 463-64 (S.D. W. Va. 2010) ("I will also apply the lodestar cross-check as an element of objectivity in my analysis."). Plaintiff, therefore, addresses the lodestar factors in relation to his attorney's fees request.

This Court has previously set out the factors to be considered in applying the lodestar method to a request for attorney's fees. Courts are to consider

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Thomas v. Smith, Dean & Assocs., Inc.*, No. ELH-10-CV-3441, 2011 WL 2730787, at *6 (D. Md. July 12, 2011) (copy attached as "Exhibit H"). Most of these factors have been addressed in Plaintiff's First Memo and Plaintiff's Second Memo and will, therefore, not be discussed again here. Otherwise, an application of these factors to the instant case supports the attorney's fee requested by Plaintiff.

## A. Application of Lodestar Factors

The time, labor, and expense required. The Plaintiff's legal team devoted substantial time and attention to the case as warranted. Alan G. Crone is the lead plaintiff's counsel for this case. He reports the identity of the billing professional, the date the work was performed, a description and summary of the work performed and the time and value of the hours expended by plaintiff's legal team in his Fourth Declaration with exhibits. (Exhibit J). Counsel worked as a team dividing the tasks to be undertaken with an eye towards timely delivery of service and efficiency. All billing entries were memorialized contemporaneously as they were performed and with the exercise of reasonable billing judgment. Plaintiff's counsel was able to successfully

settle this matter without higher hours because of the skill and efficiency of counsel and because the settlement reached was extremely beneficial to the putative class.

Fourth Declaration of Alan G. Crone, Esq. (hereinafter, "Crone 4Dec") ¶12.

**The novelty and difficulty of the questions.** FLSA cases are all novel. The case law interpreting the statute and accompanying regulations is sparse. In this case the outside sales exemption at issue would have been hotly litigated by both sides. At the outset significant legal research was required to determine whether the plaintiff bore a viable claim. Due to the experience and sophistication of counsel on both sides the parties were able to resolve these novel issues of liability and damage calculation resulting in the settlement now before the Court. Crone 4Dec ¶14.

**The level of skill required to perform the legal services properly.** Alan G. Crone, lead counsel in the instant matter, been involved in FLSA collective actions for the past ten years, and concentrates his practice on FLSA actions. He has been involved in a large number of FLSA settlements, including multi-million dollar settlements with large corporate entities. His experience and knowledge in this area facilitated settlement attempts and enabled a discussion of the issues which resulted in an eventual compromise between the parties. The early settlement is a result of the efficiency of counsel in this matter Crone 4Dec ¶15.

**The preclusion of employment by the attorney due to acceptance of the case.** Of course, any firm or group of lawyers' capacity to purse cases is finite. Any case accepted does preclude the lawyer from accepting some amount of additional cases. This case is no different, however there is nothing so unusual about this case that it displaced more than its share of work for Mr. Crone and his firm Crone 4Dec ¶ 16.

**The Customary Fee.**

The fees broken down by hourly rates charged by plaintiffs' counsel are as follows:

| Team Member | Hourly Rate |
|---|---|
| Alan G. Crone, Esq. | $350.00 |
| John Fredrickson, Esq. | $350.00 |
| Kenneth E. Barnes, Esq. | $250.00 |
| James J. Webb, Esq. | $250.00 |
| Maggie A. Crone | $150.00 |

Crone 4Dec ¶ 17.  These rates are consistent with the accepted rates identified in Appendix B of

the Local Rules of this Court with the exception of Maggie A. Crone's rate.  Her rate exceeds

those on the Appendix for support staff, but her rate is consistent with the prevailing rates in

Memphis, Shelby County, Tennessee and is her normal and usual rate for billing hourly rate

clients of Mr. Crone's firm Crone 4Dec ¶ 17.

**Whether the fee is fixed or contingent.**  Counsel took this case as a contingency fee.

Counsel bore the risk that they might not recover anything for this case Crone 4Dec ¶18.

**The time limitations imposed by the client or the circumstances.**  No unusual time

limitations were present in this case.

**The amount involved and the results obtained.**  The total settlement fund in

this case is Six Hundred Twenty-Five Thousand and Sixty-Six Dollars ($625,066.00).

The results obtained for the plaintiff class was excellent, with opt-in plaintiffs receiving

damages for longer than the applicable statute of limitations. Furthermore, Defendant

altered its business practices as a direct result of this litigation.  Finally, there was

approximately a 34% opt-in rate in this settlement, which is higher than normal.  *See Ellis*

*v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444 (W.D. Pa. 2007) ("The opt-in

rate in a FLSA collective action not backed by a union is generally between 15 and 30

percent."). The *Teague* court noted that the most critical factor in determining a

reasonable attorney's fee award is the degree of success obtained in the case. 213 F.

Supp. 2d at 583 Crone 4Dec ¶ 20.

**The experience, reputation, and ability of the attorneys.**

All counsel have significant experience in bringing and litigating complex cases

particularly FLSA collective action cases. The experience of each team member is detailed

above. Mr. Crone as lead counsel has particular experience in this area. Mr. Crone has both

prosecuted and defended FLSA collective actions, class actions, mass joinder, and complex

litigation. He was lead counsel in a case for the class of Plaintiffs in In re Prime Succession, Inc.

FLSA Class Action Litigation, docket number 99-2278 D/Bre, which was successfully resolved

in December 1999. He served as lead counsel for a group of Defendants in successfully defeating

class certification in the case of Cox v. AA Check Cashers, Inc., et al., docket number 00-2030.

Mr. Crone was lead counsel for the Defendant in the class action case of Spencer v. Cash In A

Flash Check Advance of Arkansas, LLC in state court in Jonesboro, Arkansas, which was

settled. He was lead counsel for a group of Plaintiffs in the cases of Graham, et al. v. Bank of

Mississippi, et al. and Crone, et al. v. Recomm Operations, Inc., et al., which were joined

through the Judicial Panel on Multi-district Litigation in the case of In re Recomm Contract

Litigation; serving on the Plaintiffs' Steering Committee in a leadership capacity. Mr. Crone

was lead counsel for a group of Plaintiffs in the putative class action of Matthews, et al. v. Senior

Care Plus, et al., docket number 00-2141 G A. He was lead counsel in a case for the class of

Plaintiffs in Robert Harvey, et al. v. Luby's, Inc., et al., docket number 01-2621 MI/A in the U.S.

District Court for the Western District of Tennessee, which was resolved. Mr. Crone was lead

counsel in a case for the class of Plaintiffs in Nancy Hammond, et al. v. Lowe's Home Centers,

Inc., docket number 02-2509 in the U.S. District Court for the District of Kansas, which was

successfully resolved. Mr. Crone was lead counsel in a case for the class of Plaintiffs in Martin

Lamb, et al. v. Sprint United Management Company, docket number 05-2023 in the U.S. District

Court for the District of Kansas, which was successfully resolved. Additionally, I am currently

acting as lead counsel for the Plaintiffs in the following FLSA collective action cases: James

Allen Frye, et al. v. Baptist Memorial Hospital – Memphis, docket number 07-2708 in the U.S.

District Court for the Western District of Tennessee; and Greg Kuebel v. Black & Decker (U.S.)

Inc., docket number 08-6020 in the U.S. District Court, Western District of New York, Rochester

Division Crone 4Dec ¶¶4,5,6; Declaration of John Fredrickson ¶2,4.

**The undesirability of the case.**  This type of case is not desirable to every lawyer in

general or to every "labor and employment" plaintiffs' attorney specifically.  The FLSA is

complex and its procedure for collective actions can be esoteric.  Mr. Crone is one of the few

(although increasing) employment law attorneys who has significant experience handling such

cases Crone 4Dec ¶21

**The nature and length of the professional relationship with the client.**

Counsel's relationship with Plaintiff began with the representation in the instant action,

with counsel accepting Plaintiff's case on a contingency basis Crone 4Dec ¶22.

**Awards in similar cases.**  Counsel has received similar attorneys' fees awards

based on a percentage of recovery and within these guidelines before.  Some are

referenced above Crone 4Dec ¶23.  When applying the lodestar method as a cross-check

of the percentage-of-the-fund approach, courts have applied lodestar multipliers of up to

6 times the lodestar. *Demunecas v. Bold Food, LLC*, No. 09 Civ. 00440(DAB), 2010 WL

3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers

from 2 to 6 times lodestar.") (copy attached as "Exhibit I"); *Jones v. Dominion Resources Servs., Inc.*, 601 F. Supp. 2d756, 766 (S.D. W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee."). Given the complexity of the case and particularly given the excellent results for opt-in plaintiffs, even a high lodestar multiplier would be appropriate in the case at bar. Although in this particular case a very modest lodestar multiplier is necessary to reach the requested fee.

The parties agreed that Plaintiff's counsel, upon approval of the court, receive an attorneys' fee of $200,000.00. Counsels' total base lodestar is $75,275.61. Crone 4Dec ¶41. A 3.5 multiplier produces a total lodestar fee of $263,464.64. A 4.0 multiplier produces a lodestar of $301,102.44. Therefore, the actual multiplier at issue, 2.65, is well within the 2.5 to 4.0 range approved in most cases and considerably under the 6.0 multiplier allowed by the *Demunecas* court.

## B. Discussion of the Hours Devoted to the Litigation

The issue before the court at this time is whether the fees agreed to by the parties are reasonable in light of the overall settlement. The lodestar amount upon which the Court is centering is inquiry is calculated in a reasonable manner. Counsel were very efficient in the use of their time, no duplication of effort is present, and all counsel used reasonable billing discretion when recording their hours. Counsel have divided and reported their billing based on the format contained in Appendix B of the Local Rules. This summary is attached to Mr. Crone's Declaration as Exhibit A. Some of the categories do not apply due to the progress of this particular case. The categories which do apply and which are represented in the Summary are: 1. Case Development, Background Investigation & Case Administration; 2. Pleadings; 3.

Discovery; 4. Motions Practice; 5. Attending Court Hearings; 6. ADR-Settlement Efforts; and,

7. Fee Report Preparation.

1. Case Development, background investigation, and case administration.

Prior to filing the Complaint Counsel researched the law and facts to determine that Mr.

Leigh's claims were valid and that it was appropriate to pursue the case in court and as a

collective action. The legal issues involved are unique and Kenneth E. Barnes, Esq. did an

excellent job of developing the legal theories which would govern Plaintiff's legal strategy. Mr.

Crone and Mr. Barnes then used the fruits of Mr. Barnes' legal research as a touchstone during

all subsequent phases of the case Crone 4Dec ¶25.

After filing the Complaint counsel continued to conduct factual investigations as new

witnesses and opt-ins surfaced. Counsel also devoted time to maintain good communication

with Plaintiff and local counsel to facilitate filing of the case, to keep them appraised of

developments and other logistical issues Crone 4Dec ¶26.

In this billing category, counsel spent 37.9 hours totaling $8,902.50.

2. Pleadings.

Counsel devoted reasonable and necessary time to drafting and reviewing pleadings filed

on behalf of both parties. Crone 4Dec ¶27.

In this billing category, counsel spent 6.5 hours totaling $1,575.00.

3. Discovery.

The parties did not conduct much formal discovery in this case because they began to

discuss settlement at such an early stage. Prior to settlement discussions Plaintiff's counsel

prepared initial disclosures which required detailed calculation of Plaintiff's overtime damages.

These calculations required communication with Plaintiff about his time spent working for each

week he claimed overtime compensation.  Counsel also negotiated a Scheduling Order and

Discovery Plan with defense counsel.  Counsel also began to draft written discovery requests

which were never propounded.  Even though such written discovery responses were never

propounded and some other motions detailed later in this presentation were never filed, Counsel

did not know about the pending settlement negotiations at that time or was not satisfied of such

negotiations success.  Preparations for full blown discovery were in fact necessary at that time

and part of the success of any settlement negotiation is for Plaintiff's Counsel to communicate to

the defense at all times that it is prepared to proceed and that it is not relying on settlement Crone

4Dec ¶28.  "Cases you prepare to settle – go to trial.  Cases you prepare to go to trial --- settle."

Unknown.

     For this billing category plaintiff's counsel spent 9.75 hours representing $2,787.50.

   4.  <u>Motions Practice</u>.

     Counsel prepared a Motion for Conditional Certification and Notice and Motions

attendant with the settlement of this case.  Again, although Plaintiff never filed his Motion for

Conditional Certification and Notice the drafting and preparation of such motion was invaluable

in forming the settlement strategy and the value of the case.  The legal research and factual

investigations helped counsel to evaluate the factual representations made by the defense before

and during the settlement negotiations.  Counsel spent time communicating with Mr. Leigh

during this period Crone 4Dec ¶29.

     Counsel also spent significant time and effort preparing various versions of the Motions

to Approve the Settlement in this case.  This effort required extensive briefing.  As the Court is

aware, this particular area of the law has evolved a great deal in recent years (1-2).  As more

cases settle and receive judicial attention and those opinions are published the procedure to

review and approve the settlements change. The Court correctly required additional detailed briefing to insure that the proper procedures were in place Crone 4Dec ¶30.

This phase of the case required counsel to spend 63.50 hours representing $15,400.00

5. Attending Court Hearings.

There were only two hearings in this case, both related to approval of the settlement. The first on July 28, 2010 was telephonic. Mr. Crone attended the second one; the Hearing to Approve the Settlement in person on September 19, 2011 in Greenbelt, Maryland. Mr. Crone attended both hearings with Mr. Fredrickson as required by this Court's Local Rule Crone 4Dec ¶31.

Counsel spent a total of 12 hours related to hearings representing $1,881.25.

6. ADR-Settlement.

The parties were able to resolve this case without the use of formal mediation or other ADR techniques. The parties conducted negotiations at arms-length over the phone and in person. The parties exchanged information and documents to support their settlement positions. Plaintiff's counsel spent significant time communicating with Mr. Leigh about the content of the settlement negotiations and his directions about settlement Crone 4Dec ¶32.

Once the parties arrived at a settlement Plaintiff's Counsel had significant responsibilities related to execution and performance of the settlement. Plaintiff's Counsel negotiated and co-drafted the settlement documents with defense counsel. Plaintiff's Counsel communicated with Mr. Leigh and other interested parties concerning the progress of the settlement. Counsel communicated frequently with defense counsel over details related to drafting the settlement documents including: the settlement agreement, Motion to Approve Settlement with Exhibits, Memorandum to Approve Settlement, the proposed notice etc… Crone 4Dec ¶33.

Plaintiff's Counsel also responded to inquiries from the Court over legal issues and application of the settlement. As a result counsel spent a great deal of time and effort researching and drafting additional briefing for those issues Crone 4Dec ¶34.

Once the notice went out counsel and his staff fielded telephone calls and other contact from potential opt-in plaintiffs who had questions about the details and operation of the settlement. Mr. Crone and his staff stood ready to respond quickly to any and all such inquiries Crone 4Dec ¶35.

Counsel filed all of the Consent Forms with the Court and interfaced with defense counsel and the Claims Administrator over questions related to execution of the settlement documents. On occasion the Claims Administrator had questions of all counsel which need to be resolved Crone 4Dec ¶36.

James J. Webb, Esq. conducted significant research and drafting of Plaintiff's Second Supplemental Memorandum in Support of Plaintiff's Motion to Approve Settlement and assistance in preparation for the hearing for Settlement Approval on September 19, 2011. Mr. Webb participated in this way because of the high quality of his research and writing skills and Mr. Barnes was occupied with other matters during that period. Mr. Webb's efforts were not duplicative of any other professionals and his billing does not reflect any "getting up to speed" on the file Crone 4Dec ¶37.

The billing for this category totaled 129 hours representing $33,727.50.

7. Fee Report Preparation.

Although not a fee "petition" Counsel, at the Court's direction, prepared this Revised Second Supplemental Memorandum in Support of Plaintiff's Supplemental Motion to Approve Settlement, Fourth Declaration of Alan G. Crone, and billing summary. Preparing and drafting

such documents are intrinsically time consuming in order for counsel to insure that such statements of billing are accurate and reasonable.  Mr. Crone took great care to insure that such efforts were coordinated to insure that no duplication of effort occurred Crone 4 Dec ¶37

Counsel devoted 27 hours representing $7,350.00 to this effort.

## C.  Billing Summary

The breakdown of the lodestar for Plaintiff's Counsel is:

1. Case management,etc       37.90 hours
2. Pleadings       6.50 hours
3. Case management - Discovery       9.75 hours
4. Motions Practice       63.50 hours
5. Attended Court Hearings       12.00 hours
6. Settlement       129.0  hours
7. Fee Report Preparation       27.00 hours

Total       285.65 hours

A detailed listing of all time billing records is attached to Mr. Crone's Declaration as Exhibit A. All billing professionals recorded their time in a computerized time billing software program as the services were performed.  Counsel reviewed said records to eliminate any improper charges using reasonable billing judgment.  All legal billing set forth in said Exhibit was reasonably necessary to successfully prosecute this case and in the exercise of Mr. Crone's professional judgment were necessary specifically to produce the outcome of this case Crone 4Dec ¶38.

Plaintiff's counsel also incurred expenses in this litigation which should be included in the lodestar calculation.  Such expenses detailed in Mr. Crone's declaration and attached thereto

as Exhibit B were reasonably incurred during the course of the litigation and are of the type that are customarily charged by counsel to their fee paying clients.

| | |
|---|---|
| Legal Research Charge | $912.77 |
| Court Filing Fees | $400.00 |
| Service of Process | $ 80.00 |
| Copies | $243.41 |
| Long Distance | $22.32 |
| Postage w/FedEx fees | $95.42 (Postage alone are $12.18 & FedEx chgs are $83.24) |
| Travel expenses | $1,897.94 |
| Total Expenses | $3,651.86 |

Crone 4Dec ¶39.

Considering that:

✓ the Defendant has agreed that the fee requested is reasonable and is willing to pay it;

✓ the fee has been published in the notice to potential opt-ins and not only has no one objected, but the settlement received an above-average opt-in rate;

✓ if the requested amount is reduced or otherwise not paid to Plaintiff's counsel the reduced amount will not directly benefit the opt-in plaintiffs by increasing their recovery under the settlement;

✓ the settlement outcome is very beneficial to the class members and the result was obtained by Plaintiff's counsel in an efficient and painless manner for the class members;

✓ Plaintiff and his counsel obtained an change in Defendant's compensation program relative to the positions at issue in this case in unified compliance with the FLSA;

✓ the requested fee satisfies both the percentage and the lodestar cross-check methods of determining reasonableness; now,

Therefore, the Court should approve this element of the settlement agreement and approve the

requested fee in total ($200,000.00) to Plaintiff's counsel.

**III.    Conclusion.**

In conclusion, this Court should apply the percentage-of-the-fund method in considering

Plaintiff's fee application and award Plaintiff $200,000 in attorney's fees—a little less than a

third of the settlement fund, which is a percentage commonly awarded in class action

settlements.  If the Court applies the lodestar method, either independently or as an informal

cross-check of the percentage-of-the-fund method, it should also approve payment to Plaintiff's

counsel its requested $200,000 in attorney's fees and expenses.  Moreover the Court should

approve the underlying settlement including the named plaintiff's incentive payment.

Dated:  October 1, 2011                           Respectfully submitted,


                                                  s/ Alan G. Crone
                                                  Alan G. Crone, TN Bar No. 014285
                                                  CRONE & MCEVOY, PLC
                                                  5583 Murray Rd., Suite 120
                                                  Memphis, TN 38119
                                                  901.737.7740 (voice)
                                                  901.737.7558 (fax)
                                                  acrone@thecmfirm.com (email)

                                                  John C. Fredrickson, Esquire
                                                  Federal Bar No. 02566
                                                  O'Malley, Miles, Nylen, & Gilmore, P.A.
                                                  11785 Beltsville Drive, 10th Floor
                                                  Calverton, MD  20705
                                                  Phone: 301.572.1935
                                                  Fax: 301.572.6655
                                                  Email: jfredrickson@omng.com

                                                  *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was filed electronically and notice of such filing was made electronically to Defendant's counsel pursuant to the Electronic Case Filing Rules of the United States District Court for the District of Maryland Southern Division on October 1, 2011.

Richard S. Siegel
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, NW, 11 th Floor East
Washington, D.C. 20005-3314

Guy N. Halgren
Samantha D. Hardy
Sheppard Mullin Richter & Hampton, LLP
501 W. Broadway, Suite 1900
San Diego, CA 92101-3598

s/ Alan G. Crone