IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AVARY LEIGH, et al.                 :

                                    :

       v.                           :   Civil Action No. DKC 10-0218

                                    :

BOTTLING GROUP, LLC                 :

                                    :

### MEMORANDUM OPINION

The parties to this conditionally certified collective action under the Fair Labor Standards Act seek approval of a proposed class settlement. The relevant issues have been fully briefed, a settlement hearing has been held, and no objection to the settlement has been made. For the reasons that follow, the proposed settlement will be approved in part.

I.  **Background**

On January 27, 2010, Plaintiff Avary Leigh, on behalf of himself and similarly situated others, filed a complaint against Defendant Bottling Group, LLC, seeking unpaid regular and overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201, *et seq*. The complaint alleges that Mr. Leigh was employed by Defendant as a "Relief Pre-Sell Representative" from approximately September 15, 2008, to December 8, 2009; that he regularly worked in excess of forty hours per week without receiving overtime compensation; and that

he was "regularly" required to work "off-the-clock," after his regular shifts had ended.  (ECF No. 1 ¶ 13).[1]  The complaint further states that Mr. Leigh is similarly situated to other Relief Pre-Sell Representatives who "were, are, or will be employed by Defendant within three years from the commencement of this action" and were not, or are not being, compensated for all hours worked and/or at the overtime rate for hours worked in excess of forty per week.  (*Id.* at ¶ 37).

Defendant answered the complaint, denying all material allegations and asserting a number of affirmative defenses, including that "[t]he FLSA overtime requirements do not apply to Plaintiff because Plaintiff falls within exemptions and exclusions under federal wage and hour law."  (ECF No. 7, at 7).  On March 30, 2010, a notice of consent to join the suit was filed by Leonard W. Smith, III.  He was added as a named plaintiff on the same date.

On April 28, 2010, the parties filed a stipulation and agreement, indicating that they were "discussing resolution of this matter and desire[d] to maintain the status quo during that process."  (ECF No. 18, at 1).  They advised of their agreement to define a "putative class member" as an individual who was

---

[1] Plaintiffs have since disavowed that Mr. Leigh was made to work "off-the-clock."  In fact, they now assert that there was no clock.  (ECF No. 26, at 4).

"suffered or permitted to work by Bottling Group in the Position of Relief Pre-Sell Representative since January 27, 2007," and "subject to Bottling Group's payroll policy, practice and/or system which Plaintiffs allege subjected them to working more than 40 hours in a workweek without lawful compensation[.]" (*Id.* at 2).   After further defining "opt-in member" as "a putative class member who eventually opts in to the Action and becomes represented by [Plaintiffs' counsel]," the parties agreed that "[t]he statute of limitations under the [FLSA] with respect to the claims of any opt-in member is tolled from April 1, 2010[,] until 30 days after either party gives notice in writing that this tolling period is terminated." (*Id.*).[2]

Shortly thereafter, Plaintiffs filed an unopposed motion to approve settlement, attaching, *inter alia*, a fully executed stipulation and settlement agreement.   (ECF Nos. 19, 20).   In this agreement, the parties purported to settle not only the claims of Mr. Leigh and Mr. Smith, but also those of the as-of-yet uncertified class members.   Under the proposed agreement, Defendant was to create a settlement fund with a "maximum possible value" of $600,000.   (ECF No. 20-1, at 9).   One-third of that amount, $200,000, was to be paid to Plaintiffs' counsel as attorneys' fees; $9,000 was to go to Mr. Leigh as an

---

[2] No such notice has since been given.

"incentive award"; and $15,000 would be set aside to pay a claims administrator.  The "Payout Fund" – that is, the portion of the settlement fund available to compensate class members – was to have a "maximum possible value" of $376,000. (*Id*. at 10-11).  Rather than notifying the putative class members of their right to opt-in to the law suit, the parties proposed giving notice of the right to opt-in to the settlement.  Under the proposed agreement, each opt-in member would receive an individual settlement award calculated by dividing the maximum "Payout Fund" amount by "all weeks worked in the Covered Positions during the Collective Period based on Defendant's records" (ECF No. 20-1, at 11), and multiplying by the number of weeks worked by individual plaintiffs during the relevant time period.

During a telephone conference, the court expressed concern about various aspects of the proposed settlement – among them, the propriety of (1) settling on behalf of a class of plaintiffs who had not yet been given notice or opted-in to the case, and (2) awarding attorneys' fees based on a percentage of the settlement fund rather than according to a lodestar calculation. Soon thereafter, the parties filed a revised stipulation and settlement agreement.  (ECF Nos. 25, 26).  The revised agreement increased the "maximum possible value" of the settlement fund from $600,000 to $625,066 – adding the extra $25,066 to the

4

"Payout Fund" – but otherwise left the material terms and procedure set forth in the original agreement unchanged.

By a memorandum opinion and order issued March 29, 2011, the court denied the motion for approval of settlement, but identified a procedure pursuant to which the putative plaintiffs could be provided notice of the proposed settlement and afforded the opportunity to opt-in and be heard prior to approval. (ECF Nos. 27, 28). Accordingly, the parties were permitted "to amend and re-file their motion and supporting documents, requesting conditional certification of the collective class and facilitation of notice of the proposed settlement to putative class members." (ECF No. 27, at 10). The court also expressed "a word of caution" to Plaintiffs' counsel regarding the fee award under the proposed settlement:

> Plaintiffs' counsel is requesting approximately one-third of the amount of the maximum possible value of the settlement fund, apparently without regard to the size of the collective class or the actual work performed on its behalf. While it remains to be seen whether a percentage of the fund award, rather than a lodestar amount, is appropriate in this case, the amount requested would clearly be subject to a reasonableness standard and Plaintiffs' counsel should appear at any settlement hearing prepared to demonstrate how the amount he requests is appropriate under that standard.

(*Id.* at 12-13).

On April 19, the parties jointly filed a document entitled "Submission of Amended Exhibits Pursuant to Order Dated March 29, 2011," attaching, *inter alia*, an amended notice of the FLSA collective action and proposed settlement, an opt-in claim form, and a proposed order granting conditional approval of the settlement. (ECF No. 30). The court construed this "submission" as a motion for collective action certification and approval of the settlement, and granted it in part. Specifically, the court permitted the case conditionally to proceed as a collective action; conditionally appointed Plaintiff Avary Leigh as the class representative; conditionally appointed Plaintiffs' counsel as counsel for the collective class; approved its own notice and opt-in forms; confirmed Rust Consulting, Inc., as the claims administrator; set certain deadlines for putative plaintiffs to be notified, opt-in, and/or object to the proposed settlement; and set a time and date for a settlement hearing. (ECF No. 34). The motion was denied, however, insofar as the parties sought approval of the proposed settlement. The court explained that it would "not evaluate the fairness of the settlement until all Plaintiffs have appeared in the action and have had an opportunity to object to the terms of the settlement." (*Id*. at 6).

On June 7, 2011, the claims administrator mailed class notices to 165 putative plaintiffs, advising them of their right

to opt-in to the proposed settlement and to be heard regarding any objections. Two of these notices were returned as undeliverable, but the administrator was able to obtain current addresses for these individuals and re-mail them. The claims administrator received 57 timely claim forms, two of which were incomplete. The two putative plaintiffs who submitted incomplete forms were advised of the deficiencies and one returned a completed form to the claims administrator. Thus, "56 Claim Forms [were] considered valid and timely." (ECF No. 43, Declaration of Abigail Schwartz, Project Manager for Rust Consulting, Inc., at ¶ 11). "[A]pproximately 34% of the 165 total [putative] Plaintiffs" opted-in to the suit and "[t]he number of valid and timely [c]laim forms represents approximately 5,037 workweeks claimed out of approximately 10,787 total workweeks for the Class, which is approximately 47% of the total workweeks for the Class." (*Id.* at ¶ 12). The claims administrator "calculated that each Plaintiff would be eligible to receive approximately $37.18 per workweek from the $401,066.00 Payout Fund." (*Id.* at ¶ 13).

On the morning of the settlement hearing, the court received a document entitled "second supplemental memorandum in support of Plaintiff[s'] supplemental motion to approve settlement," in which Plaintiffs argued that "the percentage of the fund method is common in FLSA attorney's awards and should

be used in the case at bar, but [that] . . . a cross-check application of a lodestar calculation also supports the attorney's fees requested by Plaintiff[s]." (ECF No. 44, at 1-2). Citing this court's decision in *Lane v. Ko-Me, LLC*, Civ. No. 10-2261, 2011 WL 3880427, at *3 (D.Md. Aug. 31, 2011), Plaintiffs noted that the court "might use the lodestar method" to assess the reasonableness of the fee award (*id.* at 4), and set forth in an accompanying declaration a table purporting to demonstrate the approximate number of hours worked prior to the settlement hearing by four attorneys and one paralegal, their respective billing rates, the "total value" of their work, and the costs incurred. (ECF No. 44-1 ¶ 3). Based on this summary, and without providing supporting documentation establishing the reasonableness of the number of hours and the hourly rates, Plaintiffs' counsel claimed a "total lodestar" amount of $60,076.00. (*Id.*). Nevertheless, they requested a fee award of $200,000, arguing that this amount is "a little less than a third of the [maximum possible value of the] settlement fund [*i.e.*, $625,066.00], which is a percentage commonly awarded in class action settlements." (*Id.* at 8).

The settlement hearing took place on September 19, 2011. Counsel for both parties confirmed that the total payout amount to the class members would be $187,275.66 and that each plaintiff would receive $37.18 per workweek, multiplied by the

number of weeks he or she worked between January 27, 2007, and January 1, 2011. Plaintiffs' counsel represented that, on average, the plaintiffs would receive approximately 75 to 80% of their total claim amounts, and argued that the opt-in rate of 34% was particularly strong for a case of this size. Further noting that there was no opposition to the proposed settlement, he requested approval of the settlement as to the collective class members, and defense counsel joined that request. Regarding the proposed fee award, Plaintiffs' counsel pointed to his declaration, attached to the second supplemental memorandum, as establishing a base lodestar amount of $60,076. He argued that courts in similar cases have approved a "multiplier" of between 2.5 to 4 times the lodestar amount, and that the award sought in this case, $200,000, was a multiplier of approximately 3.4 times the lodestar amount, which was within an acceptable range.

The court observed that no member of the collective class had objected to the proposed settlement or appeared at the settlement hearing, and stated that it was inclined to approve the settlement as to all issues other than attorneys' fees. It further found, however, that Plaintiffs had not demonstrated that a $200,000 fee award was reasonable in this case. Specifically, the court noted that (1) Plaintiffs' counsel had not submitted declarations and supporting records establishing

the reasonableness of the claimed lodestar amount; (2) the cases cited by Plaintiffs in support of awarding a percentage of the settlement fund as a fee award were class or "hybrid" actions, not collective actions, and that it was unknown whether principles applicable in common fund cases could apply in the context of the FLSA; and (3) it was reluctant to approve a settlement where the total pay-out amount to the plaintiffs ($187,275.66) was significantly less than the proposed fee award ($200,000).  The court advised, however, that it would permit Plaintiffs' counsel to file an amended declaration, attaching documentation in support of a proposed fee award, within fourteen days.

On October 3, Plaintiffs' counsel filed a document entitled "revised second supplemental memorandum in support of Plaintiffs' supplemental motion to approve settlement," attaching, *inter alia*, an expanded declaration in support of the requested award of attorneys' fees and costs, as well as voluminous time records.  (ECF No. 46).  Plaintiffs' counsel continues to seek an award of attorneys' fees of $200,000.

## II.  Standard of Review

Under the FLSA, "there is a judicial prohibition against the unsupervised waiver or settlement of claims." *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114–16 (1946)).

10

Nevertheless, "[c]laims for FLSA violations can . . . be settled when the settlement is supervised by the [Department of Labor] or a court." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005).   While the Fourth Circuit has not directly addressed the factors to be considered in deciding motions to approve FLSA settlements, district courts in this circuit have typically applied the considerations set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). As this court stated in *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010):

> *Lynn's Food Stores* suggests that an FLSA settlement should be approved if the settlement "does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute." [*Lynn's Food Stores*, 679 F.2d at 1354]; *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1210, 2009 WL 3094955, at *8 (E.D.Va. Sept. 28, 2009) ("If [a] proposed settlement reflects a reasonable compromise over [issues actually in dispute, then approval by a district court promotes the policy of encouraging settlement of litigation"]) ([citing] *Lynn's Food Stores*, 679 F.2d at 1354. . . . *Lynn's Food Stores* and similar cases recognize a role for less-than-full-value compromise in the FLSA settlement process. . . . These compromises reflect the "many factors [that] may be in play as the parties negotiate," including disagreements over "the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer." *Bonetti v. Embarq Mgmt. Co.*, 715 F.Supp.2d 1222, 1227 (M.D.Fla. 2009).

It follows logically, then, that parties requesting approval of a proposed settlement "must provide enough information for the court to examine the bona fides of the dispute":

> The parties' motion (or presentation at a hearing) must describe the nature of the dispute (for example, a disagreement over coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise. Parties wishing to compromise a coverage or exemption issue must describe the employer's business and the type of work performed by the employee. The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages. If the parties dispute the computation of wages owed, the parties must provide each party's estimate of the number of hours worked and the applicable wage. In any circumstance, the district court must ensure the bona fides of the dispute; implementation of the FLSA is frustrated if an employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment.

*Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241-42 (M.D.Fla. 2010).

The court must also assess the reasonableness of the proposed award of attorneys' fees. A number of recent cases decided by the United States District Court for the Middle District of Florida, relying upon *Lynn's Food Stores*, have described the court's task in this regard as assuring "'both

that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'"   *Dees*, 706 F.Supp.2d at 1243 (quoting *Silva v. Miller*, 307 Fed.Appx. 349, 351 (11th Cir. 2009)).   Thus, if the motion demonstrates that the proposed fee award was "agreed upon separately and without regard to the amount paid to the plaintiff, then, unless . . . there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel."   *Bonnetti*, 715 F.Supp.2d at 1228.   These cases appear to suggest, in other words, that so long as the amount paid to the plaintiffs' counsel does not affect the amount paid to the plaintiffs themselves, the fee award need not be reasonable.

Section 216(b) expressly provides, however, that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."   29 U.S.C. § 216(b).   Thus, where judgment is entered in favor of the plaintiffs on their FLSA claims, an award of "reasonable" attorneys' fees is mandatory.   Of course, in the context of a settlement, judgment is not entered in favor of either party – in fact, the defendants typically deny that any FLSA violation

has occurred, as does the defendant in this case.  It would make little sense to require the amount of fees awarded to be reasonable where the plaintiffs prevail on the merits, but to abandon that requirement altogether where the parties agree to settle the case.  Moreover, from a practical standpoint, any time that plaintiffs would receive less than the full value of their claims in a settlement, there is a strong likelihood that the amount paid to the plaintiffs would be adversely affected by an exorbitant award of attorneys' fees. *See Cisek v. National Surface Cleaning, Inc.*, 954 F.Supp. 110, 110 (S.D.N.Y. 1997) (plaintiffs' counsel "should have perceived that every dollar the defendants agreed to pay [the attorneys] was a dollar that defendants would not pay to the plaintiffs").  Accordingly, to the extent that the plaintiffs' claims in an FLSA case are compromised by a proposed settlement, the reasonableness of the fee award must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Dees*, 706 F.Supp.2d at 1243.

## III. Analysis

The parties' proposed settlement is divided into four parts: (1) the benefits to Plaintiffs, (2) the payment of an incentive fee to Mr. Leigh, (3) the claims administration fee, and (4) the award of attorneys' fees to Plaintiffs' counsel.

The court's assessment of the fairness of the parties' proposed settlement as to each of these categories, in turn, is provided below.

### A.    Benefits to Plaintiffs

As the court suggested at the settlement hearing, it is satisfied that the proposed agreement represents a reasonable compromise of contested issues as to the plaintiffs. *See Lynn's Food Stores*, 679 F.2d at 1354.   The parties assert, and the court accepts as true, that genuine disputes exist regarding (1) whether the plaintiffs were exempt from coverage under the FLSA, (2) whether any violation could be deemed willful, and (3) the proper computation of applicable hours and rates of pay.   The parties represent that the opt-in plaintiffs will receive, on average, approximately 75 to 80% of the value of their claims under the proposed agreement.   To the extent that Plaintiffs' claims are compromised, such compromise is offset by the facts that (1) "the [p]arties entered into a [s]tipulation tolling the statute of limitations with respect to the claims of any opt-in member from April 1, 2010," (ECF No. 26, at 3); (2) "the [s]ettlement is structured to compensate the [p]otential [p]laintiffs for workweeks encompassed in an additional year and two months (January 27, 2007 – April 1, 2008) to which they would not be entitled under the applicable statute of limitations" (*id.*); and (3) the proposed agreement includes a

provision requiring Defendant, as of January 1, 2011, to "modify the way in which it compensates the individuals in the Covered Positions to address the concerns raised in the Complaint," (ECF No. 25, at 15).   Thus, the settlement allows for recovery by plaintiffs who might have otherwise been without recourse, pays the opt-in plaintiffs a substantial percentage of the total value of their claims, and protects against future violations such as those alleged here.   Considering also the risk associated with continued litigation, the court finds that the proposed settlement award is fair and reasonable with respect to the benefits inuring to Plaintiffs.

**B.   Incentive Fee**

The propriety of the incentive fee in this context is not as clear.   As one court recently explained:

> There is no provision for a "representative plaintiff" under the FLSA. As the Eleventh Circuit has observed, the collective action provision of the FLSA "is a fundamentally different creature than the Rule 23 class action. Even if the [FLSA] plaintiff can demonstrate that there are other plaintiffs 'similarly situated' to him, . . . he has no right to represent them." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003) (per curiam).[3]   Because there is no

---

[3] *Cf. Simmons v. United Mortgage and Loan Investment, LLC*, 634 F.3d 754, 758 (4th Cir. 2011) ("in a collective action under the FLSA, a named plaintiff represents only himself *until a similarly-situated employee opts in*") (emphasis added) (citing *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 919 (5th Cir. 2008)).

"representative plaintiff" in FLSA collective actions, generally no incentive payment to a named plaintiff in an FLSA collective action is warranted. *See, e.g., Ayers v. SGS Control Servs., Inc.*, Nos. 03 Civ. 9078(RMB), 06 Civ. 7111(RMB), 2008 WL 4185813, at * 5-7 (S.D.N.Y. Sept. 9, 2008) (discussion [of] out-of-circuit cases involving incentive payments to named plaintiffs).

Courts have, however, awarded incentive fees to named plaintiffs who establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation. For example, in *Su v. Electronic Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at * 5 (M.D.Fla. Aug. 29, 2006), the named plaintiff testified that he feared that his career would be adversely affected as a result of initiating litigation against his former employer. He also had to use four vacation days to travel to attend hearings in the case. The Court found this evidence sufficient to support a $10,000.00 incentive fee recommended by all parties to the litigation.

. . . In *Frank* [*v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)], the [c]ourt found that the named plaintiff had been actively involved in the litigation of the case since its inception and provided counsel with assistance which [led] to a favorable settlement for the entire class. The named plaintiff averred that he feared that his role in the case "could deleteriously affect his future employment possibilities." *Id*. The court determined that these facts were "special circumstances" that supported an award of $10,523.37 (8.4% of the settlement fund) as an incentive payment.

*Heath v. Hard Rock Café Intern. (STP), Inc.*, No. 6:10-cv-344-
Orl-28KRS, 2011 WL 5877506, at *5 (M.D.Fla. Oct. 28, 2011).

In support of their position that the proposed incentive
fee is appropriate in this case, Plaintiffs argue that "Mr.
Leigh has provided the impetus for the lawsuit, the commitment
to achieving both a monetary recovery for his co-workers, also
future FLSA compliance by the company[,] both of which goals he
achieved in this settlement." (ECF No. 26, at 12). Moreover,
Mr. Leigh was involved in various aspects of the litigation from
the outset, spending "hours gathering information and meeting
with counsel both in person and telephonically to prepare the
complaint, engage in the informal discovery process, and
[participate in] the settlement process." (*Id.*). Plaintiffs
assert that, given "the total value of the settlement[,] . . .
an incentive payment of $9,000.00 is within the range
customarily awarded in cases such as this." (*Id.*).

While it may be a stretch to characterize the award of an
incentive fee in an FLSA collective action as "customary," the
court is persuaded that such an award is appropriate in this
case. Regardless of whether Mr. Leigh may properly be
considered a "class representative" in the traditional sense, he
clearly has invested significantly more in this case than have
the opt-in plaintiffs. He took the initiative to commence the
action; he has been personally involved at every stage of the

litigation; and, if the settlement is ultimately approved, he will have achieved a significant result – not only for those plaintiffs who would receive a settlement check for unpaid overtime wages, but also for future employees working in the same position.   Unlike the lead plaintiffs in *Su* and *Frank*, there is no suggestion that Mr. Leigh faces any particular challenges in terms of his current or future job prospects as a result of his participation in this case, but there is clearly a risk that he could.   Moreover, the policy underlying the FLSA – namely, "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce," *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) – would appear to be served by providing a modest incentive to plaintiffs who take such initiative and assume such risk.   Given Mr. Leigh's level of involvement in the case, that no objection has been made to the proposed award, and that the amount in question constitutes less than one and one-half percent of the total settlement fund, the court finds the proposed incentive fee of $9,000 to be fair and reasonable.

### C.   Claims Administration Fee

Rust Consulting, Inc., the claims administrator in this case, has already done substantial work by facilitating the opt-in process, and appears to have done so in a highly efficient

manner.   No objections have been raised regarding its fee, and the $15,000 amount falls within a range found reasonable by other courts.   *See, e.g., Su*, 2006 WL 4792780, at *5 (finding "fair and reasonable" a settlement administration fee of $20,368.22 for a class of similar size).   Accordingly, the court finds that the proposed claims administration fee is fair and reasonable.

### D.   Award of Attorneys' Fees

Throughout the settlement approval process, the major sticking point has related to the proposed award of attorneys' fees.   The parties initially agreed to a fee award of $200,000, representing a one-third percentage of the total settlement fund at that time, without regard to the size of the class or the amount of work that would be required.   When the court balked, they revised their agreement by increasing the size of the overall settlement fund.   This permitted Plaintiffs' counsel to argue that his fee award – still $200,000 – was "reduced as a percentage of the total value of the recovery funds." (ECF No. 26, at 13).   In denying the initial motion for approval of settlement, the court expressed doubt as to "whether a percentage of the fund award, rather than a lodestar amount, is appropriate." (ECF No. 27, at 13).   The court further asserted that, in any event, "the amount requested would clearly be subject to a reasonableness standard," strongly suggesting that

the proposed award would not pass muster. (*Id.*).   Plaintiffs'
counsel was specifically advised to "appear at any settlement
hearing prepared to demonstrate" the reasonableness of the
requested fee award. (*Id.*).

Unfortunately, he failed to do so.   On the eve of the
settlement hearing, counsel filed, *inter alia*, a declaration
purporting to establish a lodestar amount of $60,076.00 –
including unspecified "expenses" of $3,126.00 – and argued that
the proposed fee award of $200,000 was reasonable because it was
a "multiplier" of 3.4 times the lodestar, which is within the
range approved by most courts in common fund cases.   (ECF No.
44, at 2, 7).   At the hearing, the court explained (1) that it
could not determine the lodestar amount based on the current
record; (2) that it was not persuaded that an award of a
percentage of the fund, rather than the lodestar amount, was
appropriate based on the cases cited by Plaintiffs' counsel; and
(3) that it had serious questions as to how the proposed fee
award could be reasonable, given that it exceeded the total
amount payable to the class of fifty-six plaintiffs by a
substantial amount.   Nevertheless, the court permitted counsel
to address these issues in a post-hearing submission.

In that submission, counsel continues to argue that a fee
award based on a percentage of the common fund is appropriate,

citing non-FLSA settlement cases as support.[4]   He further contends that the lodestar calculation is useful as a "cross-check" for determining the reasonableness of the percentage. Plaintiffs' counsel now argues, however, that the "total base lodestar" amount in this case is no longer $60,076, as he claimed at the settlement hearing, but $75,275.61.   The difference between these figures is due, in part, to the fact that counsel claims to have spent a total of 27 hours preparing his "fee petition," billing $7,350.   (ECF No. 46, at 15; ECF No. 46-10, at 12).   Using this revised lodestar figure as a basis, he argues that "the actual multiplier at issue, 2.65, is well within the 2.5 to 4.0 range approved in most cases[.]"   (ECF No. 46, at 10).[5]

---

[4] He notes that "at least one district court in this Circuit has applied the percentage-of-the-fund approach to an FLSA collective action settlement," citing *Kidrick v. ABC Television & Appliance Rental, Inc.*, No. 3:97CV69, 1999 WL 1027050 (N.D.W.Va. 1999); however, he recognizes in a footnote on the same page that the settlement in that case "also included a normal opt-out class action."   (ECF No. 46, at 3).   Thus, *Kidrick* was a so-called "hybrid" action. *See Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, (E.D.Cal. 2010) (discussing the propriety of "hybrid" actions).   Courts that have permitted an FLSA collective action and a Rule 23 class action to proceed in the same case have routinely awarded attorneys' fees based on a percentage of the fund. *See, e.g., Johnson v. Brennan*, No. 10 Civ. 4712(CM), 2011 WL 4357376, at *18-19 (S.D.N.Y. Sept. 16, 2011).   Notably, the instant case is not a hybrid.

[5] With regard to the fee award, one gets the feeling that the tail is attempting to wag the dog.   Throughout the settlement approval process, Plaintiffs' counsel has appeared to be fixated on justifying the $200,000 fee award originally

The case law related to the settlement of FLSA collective actions is somewhat undeveloped, and courts have applied different standards in determining the reasonableness of proposed fee awards in that context. *See, e.g., Altier v. Worley Catastrophe Response, LLC*, Civil Action Nos. 11-241, 11-242, 2012 WL 161824, at *23 (E.D.La. Jan. 18, 2012) (approving multiplier of 2.17 times the lodestar amount upon agreement of the parties); *Prescott v. Prudential Ins. Co. of America*, No. 2:09-cv-00322-DBH, 2011 WL 6662288, at *2 (D.Me. Dec. 20, 2011) (where there was a "global settlement that included attorney fees," the case was "no longer to be treated as a fee-shifting case," and fees could be awarded "on a percentage of funds basis"); *Peterson v. Mortgage Sources, Corp.*, Civil Action No. 08-2660-KHV, 2011 WL 3793963, at *9 (D.Kan. Aug. 25, 2011) ("The Tenth Circuit uses a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar.") (internal citations and footnote omitted) (citing *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994)).  Although the Fourth Circuit has not addressed the question in a published opinion, it has recently suggested that a fee award in an FLSA case is properly "calculated by determining a lodestar fee." *Jackson v. Estelle's Place, LLC*,

---

agreed upon by the parties, rather than demonstrating a reasonable award.

391 Fed.Appx. 239, 241 (4th Cir. 2010) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)). District courts in this circuit have generally agreed. *See Poulin*, 2010 WL 1813497, at *1 ("As the Court must review the proposed attorney's fees in this case for reasonableness, it 'will use the principles of the traditional lodestar method as a guide'") (quoting *Almodova v. City and County of Honolulu*, No. 07-00378, 2010 WL 1372298, at *7 (D.Hawai'i Mar. 31, 2010)); *see also Gionfriddo v. Jason Zink, LLC*, Civil Action No. RDB-09-1733, 2011 WL 2791136, at *2 (D.Md. July 15, 2011).

The lodestar amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009). As the Supreme Court recently explained, a "reasonable fee" is one that is "sufficient to induce a capable attorney to undertake the representation of meritorious civil rights case." *Perdue v. Kenny A.*, --- U.S. ----, ----, 130 S.Ct. 1662, 1672 (2010). The lodestar method "yields a fee that is presumptively sufficient to achieve this objective." *Id*. at 1673. In "rare and exceptional circumstances," enhancements to the lodestar amount may be awarded. *Id*. "A fee applicant bears the burden of proving the enhancement is necessary and must do so with reference to 'specific evidence that the lodestar fee would not have been adequate to attract competent counsel.'"

24

*Spencer v. Central Services, LLC*, Civil No. CCB-10-03469, 2012 WL 142978, at *1 (D.Md. Jan. 13, 2012) (quoting *Kenny A.*, 130 S.Ct. at 1674 (internal marks omitted)).   A reduction of the lodestar fee is also appropriate where, *inter alia*, "[a]n attorneys' fee [does not] bear some reasonable relationship to the recovery of plaintiffs." *Jackson*, 391 Fed.Appx. at 241; *see also Gionfriddo*, 2011 WL 2791136, at *3 (citing *Jackson*, finding suggestion of unreasonableness in FLSA settlement where "attorney's fees account for nearly 87% of the payments made by the Defendant").

Here, Plaintiffs' counsel claims a "total lodestar" of $75,275.61, which represents 285.65 hours billed by four attorneys and one paralegal at rates ranging from $150 to $350 per hour, plus "expenses" of $3,651.86.   (ECF No. 46-10, at 12-13).   Counsel's declaration establishes that two of the attorneys have been admitted to practice for more than twenty years (Mr. Crone and Mr. Frederickson), one has been admitted to practice for more than ten years (Mr. Webb), one has been practicing for over three years (Mr. Barnes); and that the paralegal (Ms. Crone) has over four years of experience.   (*Id.* at ¶ 17).   As Plaintiffs' counsel acknowledges, the hourly rate charged by each of these professionals falls within a presumptively reasonable range under Appendix B of this court's local rules, with the exception of Mr. Barnes and Ms. Crone, who

both charge slightly higher rates.  The court accepts counsel's representation that their rates are, nevertheless, the "normal and usual rate[s]" charged by Mr. Barnes and Ms. Crone for work in their home district.  Moreover, the extent to which these rates are slightly higher than the presumptively reasonable range in this district is offset by the fact that the rates charged by the other three attorneys in this case are in the low-to-mid range for attorneys with comprable experience.  Accordingly, the court finds that the hourly rates charged by Plaintiffs' counsel are reasonable.

The court is not persuaded that the number of hours claimed by Plaintiffs, 285.65, is reasonable.  Specifically, it finds the billing of 27 hours for preparation of what amounts to an enhanced "fee petition" was excessive, particularly where such briefing was only necessary because Plaintiffs' counsel neglected to follow the court's prior direction that he be prepared to show the reasonableness of the proposed fee award at the settlement hearing.  Thus, the lodestar amount claimed by Plaintiffs will be reduced by $7,350, the value of the 27 hours billed for the post-hearing filing.  The total lodestar fee claimed by Plaintiffs must also be reduced by $3,651.86, the amount added as costs.[6]  Reducing the "total base lodestar"

---

[6]  Pursuant to 29 U.S.C. § 216(b), where a judgment is awarded in favor of the plaintiffs, the court must award costs

amount, $75,275, by $11,001.86 ($7,350 + $3,651,86), results in a revised lodestar amount of $64,273.14.   The court finds this amount to be the product of the reasonable hourly rates charged by Plaintiffs' counsel and the reasonable number of hours spent on the case.

Enhancement of the lodestar amount is not appropriate in this case.   While the record reflects that Plaintiffs' counsel achieved a commendable result for his clients, it also reflects that significant time and resources were wasted due to his intransigence on the issue of attorneys' fees.   The award sought by counsel ($200,000) amounts to roughly 107% of the combined total amount payable to the plaintiffs in this case ($187,275.66), which is unreasonably disproportionate to either the plaintiffs' recovery or the lodestar amount.   *See Jackson*, 391 Fed.Appx. at 241.   Notably, the lodestar amount determined by the court ($64,273.14) constitutes just under 35% of the total amount payable to Plaintiffs.   Thus, although a fee award based on a one-third percentage of the total settlement amount is unreasonable, a lodestar fee that roughly equates to one-third of the total amount actually paid to Plaintiffs is appropriate.   Accordingly, the court finds an award of

---

of the action in addition to reasonable attorneys' fees.   While the costs claimed by Plaintiffs are not properly part of the lodestar equation, this amount is not challenged by Defendant and will be separately awarded.   *See Spencer*, 2012 WL 142978, at *4.

attorneys' fees of $64,273.14 to be fair and reasonable in this case.   Separate and apart from the lodestar amount, Plaintiffs may also recover costs of $3,651.86.

## IV.   Conclusion

For the foregoing reasons, the court will approve the proposed settlement as to the amounts payable to the plaintiffs ($187,275.66), the incentive fee ($9,000), and the claims administration fee ($15,000).   The court will further approve an award of costs in the amount of $3,651.86.   It does not, however, approve the proposed fee award of $200,000.   Instead, it finds a lodestar amount of $64,273.14 to be fair and reasonable in this case.

Given that the court does not approve the entire settlement proposal, the question arises as to how the case should proceed. There are essentially three options.   First, the parties may accept the settlement according to the amounts approved in this opinion.   Second, either party may declare the proposed settlement null and void and elect to resume litigation. Finally, the parties may agree to present a revised settlement proposal reallocating the amounts in the current proposal.[7]   The

---

[7]   At the settlement hearing in this case, Plaintiffs' counsel suggested that the amount that would be paid to the opt-in plaintiffs represents approximately 75-80% of the full value of their claims.   If that is true, the parties may elect to restructure the proposed settlement to pay the plaintiffs full value – i.e., by taking the remaining 20-25% from the $200,000

parties will be directed to submit a joint status report within fourteen days advising as to how they wish to proceed.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

designated for attorneys' fees and paying it to the plaintiffs. As noted previously, if the plaintiffs receive the full value of their FLSA claims, the court need not assess the reasonableness of the fee award.   Assuming that such a reallocation would result in a fee award greater than the lodestar amount without undoing the progress made in the parties' settlement negotiations, this may present a preferable option to both sides.   Insofar as the opt-in plaintiffs would receive higher payments than they would under the current agreement, it would be unnecessary to repeat the opt-in procedure.   The court would, however, require the parties to present a joint affidavit or declaration attesting to the full value of the opt-in plaintiffs' claims.